# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| YVETTE BEARD, TERRY BROWN, THERESA CARR, LINDA COLES, DONNA COLGAN, MARIA DEVILLE, BILLY GEORGE DUGGAR, FRANCES BERNADETTE FORRESTER, RICHARD JOSEPH KASCHAK, BILLIE JANE LEE, ESSIE ANTONIO MITCHELL, DAMIEN MOORE, TINA MARIE ROBINSON, AMY THOMAS, JOYCE WHITE, MICHAEL WORL, TINA FORBES, TERESA KELLY, NEIL SCHAFFER, ELAINE SCHERER, JUDY BRANT, MARIA ANTOINETTE COLLIER, DORIS PORTER EDWARDS, DAVID SCOTT FOSTER, JOSE RUBEN GALVAN, ANGELA HALEY, WILLIAM EARL HOLLY, LEWIS BRYANT HORNE, CAROLYN HUMPHREY, JUSTIN COLLIER HUNT, KAREN JUDGE, RICHARD LEE LYNCH, JR., GENE DAVID MCKENZIE, KATHLEEN CLARE MILES, MYRNA NOLAN, JACQUELINE FREDIA OSBORNE, GALE MARIE PETTIS, WENDY PRESCOTT, VIOLA LYNN SPURLOCK, JACK WOLFE, WILLIAM FOSTER YOUNG,  BRITTANY NICKOLE ZABRISKIE, CAROLYN DESHARNAIS, ELIZABETH RUSHWORTH, LEASA SKAGGS, AND MAVIS RENEE HARPER, | Case No.: 1:15-cv-922 **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| ELI LILLY AND COMPANY, an Indiana corporation, Defendant. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.  Cymbalta (generically known as duloxetine) is a prescription antidepressant manufactured, marketed and sold by Defendant Eli Lilly and Company ("Lilly").  This civil action alleges personal injuries and damages that Plaintiffs suffered as a result of Lilly's failure to provide both: (a) adequate instructions for discontinuing use of Cymbalta, and (b) an adequate warning that fully and accurately informed Plaintiffs about the frequency, severity, and duration of symptoms associated with Cymbalta withdrawal.   In addition, Lilly defectively designed Cymbalta pills as delayed-release capsules with beads available only in 20, 30 and 60 mg doses.  The label instructs users that the drug "should be swallowed whole and should not be chewed or crushed, nor the capsule be opened and its contents be sprinkled on food or mixed with liquids."  Lilly's defectively designed delayed-release capsules and accompanying instructions that Cymbalta should be "gradually tapered," and only "swallowed whole" prevented Plaintiffs from properly tapering off of the drug.

### PARTIES

2.  Plaintiff is Yvette Beard, and at all times relevant to this Complaint was,  a citizen of the State of New York and resident of Erie County.

3.  Plaintiff is Terry Brown, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Maury County.

4.  Plaintiff is Theresa Carr, and at all times relevant to this Complaint was, a citizen of the State of Illinois and resident of Champaign County.

5.  Plaintiff is Linda Coles, and at all times relevant to this Complaint was, a citizen of the State of Virginia and resident of Amherst County.

6.  Plaintiff is Donna Colgan, and at all times relevant to this Complaint was, a citizen of the State of Colorado and resident of El Paso County.

7.  Plaintiff is Maria Deville, and at all times relevant to this Complaint was, a citizen of the State of Louisiana and resident of St. Landry Parish County.

8.   Plaintiff is Billy George Duggar, and at all times relevant to this Complaint was, a citizen of the State of Ohio and resident of Highland County.

9.   Plaintiff is Frances Bernadette Forrester, and at all times relevant to this Complaint was, a citizen of the State of Louisiana and resident of Calcasieu Parish County.

10.  Plaintiff is Richard Joseph Kaschak, and at all times relevant to this Complaint was, a citizen of the State of Ohio and resident of Mahoning County.

11.  Plaintiff is Billie Jane Lee, and at all times relevant to this Complaint was, a citizen of the State of Alabama and resident of Etowah County.

12.  Plaintiff is Essie Antonio Mitchell, and at all times relevant to this Complaint was, a citizen of the State of Alabama and resident of Mobile County.

13.  Plaintiff is Damien Moore, and at all times relevant to this Complaint was, a citizen of the State of South Carolina and resident of Lancaster County.

14.  Plaintiff is Tina Marie Robinson, and at all times relevant to this Complaint was, a citizen of the State of Louisiana and resident of St. Tammany Parish County.

15.  Plaintiff is Amy Thomas, and at all times relevant to this Complaint was, a citizen of the State of Kentucky and resident of Whitley County.

16.  Plaintiff is Joyce White, and at all times relevant to this Complaint was, a citizen of the State of Louisiana and resident of St. Charles Parish County.

17.  Plaintiff is Michael Worl, and at all times relevant to this Complaint was, a citizen of the State of California and resident of Orange County.

18.  Plaintiff is Tina Forbes, and at all times relevant to this Complaint was, a citizen of the State of Massachusetts and resident of Middlesex County.

19.  Plaintiff is Teresa Kelly, and at all times relevant to this Complaint was, a citizen of the State of California and resident of San Mateo County.

20.   Plaintiff is Neil Schaffer, and at all times relevant to this Complaint was, a citizen of the State of Missouri and resident of Greene County.

21.   Plaintiff is Elaine Scherer, and at all times relevant to this Complaint was, a citizen of the State of Missouri and resident of Lawrence County.

22.   Plaintiff is Judy Brant, and at all times relevant to this Complaint was, a citizen of the State of Alabama and resident of Lauderdale County.

23.   Plaintiff is Maria Antoinette Collier, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Hamilton County.

24.   Plaintiff is Doris Porter Edwards, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Shelby County.

25.   Plaintiff is David Scott Foster, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Wilson County.

26.   Plaintiff is Jose Ruben Galvan, and at all times relevant to this Complaint was, a citizen of the State of Texas and resident of Parmer County.

27.   Plaintiff is Angela Haley, and at all times relevant to this Complaint was, a citizen of the State of Alabama and resident of Fayette County.

28.   Plaintiff is William Earl Holly, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Dyer County.

29.   Plaintiff is Lewis Bryant Horne, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Williamson County.

30.   Plaintiff is Carolyn Humphrey, and at all times relevant to this Complaint was, a citizen of the State of Louisiana and resident of Caddo Parish County.

31.   Plaintiff is Justin Collier Hunt, and at all times relevant to this Complaint was, a citizen of the State of Utah and resident of Tooele County.

32.   Plaintiff is Karen Judge, and at all times relevant to this Complaint was, a citizen of the State of Alabama and resident of Jefferson County.

33.   Plaintiff is Richard Lee Lynch, Jr., and at all times relevant to this Complaint was, a citizen of the State of Florida and resident of Nassau County.

34.   Plaintiff is Gene David McKenzie, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Morgan County.

35.   Plaintiff is Kathleen Clare Miles, and at all times relevant to this Complaint was, a citizen of the State of Louisiana and resident of Caddo Parish County.

36.   Plaintiff is Myrna Nolan, and at all times relevant to this Complaint was, a citizen of the State of Louisiana and resident of Orleans Parish County.

37.   Plaintiff is Jacqueline Fredia Osborne, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Knox County.

38.   Plaintiff is Gale Maria Pettis, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Shelby County.

39.   Plaintiff is Wendy Prescott, and at all times relevant to this Complaint was, a citizen of the State of Idaho and a resident of Bingham County.

40.   Plaintiff is Viola Lynn Spurlock, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Obian County.

41.   Plaintiff is Jack Wolfe, and at all times relevant to this Complaint was, a citizen of the State of Alabama and resident of Maddison County.

42.   Plaintiff is William Foster Young, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Sevier County.

43.   Plaintiff is Brittany Nickole Zabriskie, and at all times relevant to this Complaint was, a citizen of the State of Utah and resident of Weber County.

44.   Plaintiff is Carolyn Desharnais, and at all times relevant to this Complaint was, a citizen of the State of Texas and resident of Bexar County.

45.   Plaintiff is Elizabeth Rushworth, and at all times relevant to this Complaint was, a citizen of the State of Nevada and resident of Clark County.

46.   Plaintiff is Leasa Skaggs, and at all times relevant to this Complaint was, a citizen of the State of Kentucky and resident of Hardin County.

47.   Plaintiff is Mavis Renee Harper, and at all times relevant to this Complaint was, a citizen of the State of Tennessee and resident of Shelby County.

48.   Defendant Eli Lilly and Company is, and at all times relevant to this Complaint was, an Indiana corporation with its headquarters in Indianapolis, Indiana.  Lilly is a pharmaceutical company involved in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of numerous pharmaceutical products, including Cymbalta.

## JURISDICTION AND VENUE

49.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship between Plaintiffs and Lilly and the amount in controversy exceeds $75,000.00 exclusive of interest or costs, as more fully set forth below for each individual Plaintiff.

50.   This Court has personal jurisdiction over Lilly insofar as Lilly's principal place of business and headquarters are located within this judicial district, Lilly is authorized, incorporated, and licensed to conduct business in this judicial district, Lilly maintains and carries on systematic and continuous contacts in this judicial district, Lilly regularly transacts business in this judicial district, and Lilly regularly avails itself of the benefits of this judicial district.

51.   Furthermore, Lilly has caused tortious injury by acts and omissions in this judicial district and caused tortious injury in this district by acts and omissions outside this district while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this judicial district.

52.   Venue is proper before this Court pursuant to 28 U.S.C. § 1391.

53.   Lilly is one of the largest pharmaceutical companies in the world with annual revenues exceeding $20 billion.  A substantial portion of Lilly's sales and profits have been derived from Cymbalta, whose 2013 annual sales exceeded $3.9 billion.

54.   Lilly has enjoyed considerable financial success from manufacturing and selling antidepressants, including Prozac (generically known as fluoxetine).  Lilly launched Prozac in 1988, touting it as the first "Selective Serotonin Reuptake Inhibitor" ("SSRI").  SSRIs are a class of antidepressant drugs that have been promoted as increasing the brain chemical serotonin in the synaptic clefts between the neurons in the brain.  Prozac became extremely popular in the 1990s and was the top-selling antidepressant of its kind.  Prozac's patent expired in August 2001, leading to a proliferation of generic versions of the drug.

55.   In 2001, Lilly needed to fill the void left behind by Prozac's patent expiration, and so it sought approval by the Food and Drug Administration ("FDA") for its next patented antidepressant, Cymbalta.  Cymbalta belongs to a class of antidepressants known as "Serotonin and Norepinephrine Reuptake Inhibitors" ("SNRIs").  SNRIs are similar to SSRIs, but in addition to blocking the absorption of serotonin, SNRIs are thought to block the absorption of another neurotransmitter, norepinephrine, thereby increasing the levels of both serotonin and norepinephrine in the brain.  These drugs are promoted as treatments for pain as well as depression.

56.   In 2003, the FDA initially rejected Lilly's application for approval of Cymbalta due to certain violations of good manufacturing practices and the risk of liver toxicity apparent in the drug's safety profile.

57.   Eventually, in 2004, the FDA approved Cymbalta with a liver toxicity warning included in the prescribing information.  The drug was initially approved for Major Depressive

Disorder ("MDD").  In 2007, the FDA approved Cymbalta for treatment of Generalized Anxiety

Disorder ("GAD").   Subsequently, in 2008, the FDA approved Cymbalta for treatment of

fibromyalgia

58.   Since the FDA's initial approval of Cymbalta in 2004, Lilly has aggressively marketed

the drug to the public and the medical community, spending millions of dollars each year on

advertising and promotion.  Lilly has promoted Cymbalta directly to consumers, including Plaintiffs,

through various media platforms, including internet, print, and television.  In addition, Lilly has

promoted Cymbalta to the medical community by utilizing its well-organized army of sales

representatives to personally visit physicians and health care professionals to distribute free drug

samples as well as promotional literature.

59.   Lilly's promotional campaigns have continuously failed to provide adequate

instructions to users and health care professionals for discontinuing Cymbalta and have failed to

include adequate warnings that fully and accurately inform users and health care professionals about

the frequency, severity, and duration of Cymbalta withdrawal.

60.   Withdrawal symptoms are not connected to a patient's underlying condition but rather

are the body's natural physical reactions to the drug leaving the system.  While many SSRIs and

SNRIs can cause withdrawal symptoms, the initiation, frequency, and severity of withdrawal

symptoms correlate to a drug's half-life.  The half-life of a drug is the time it takes for the

concentration of the drug in the body to be reduced by half.  This information is one of the basic

pharmacokinetic properties of a drug and is well-known to the researchers developing the drug.  It is

undisputed that Cymbalta has one of the shortest half-lives of any of the SSRIs and SNRIs.

61.   Since 2004, the Cymbalta label has stated that the half-life of Cymbalta is

approximately 12 hours.  In contrast, the half-life of Prozac is four to six days days.  The shorter the

half-life, the faster the body eliminates the drug from the system, thus creating a higher risk of

withdrawal symptoms.  Because Cymbalta's half-life is less than one day and Cymbalta is generally

administered once daily, it is possible for users of Cymbalta to experience withdrawal symptoms after

simply forgetting to take one dose.  This also means that users cannot safely taper off of the drug by

taking a capsule every other day.

62.   Despite Lilly's awareness of Cymbalta's half-life and the correlation between a short

half-life and withdrawal risk, Lilly did not include any cross-references between the

"Pharmacokinetics" section of the label and either the "Precautions section" or the "Dosage and Use"

section In fact, rather than drawing attention to the potential consequences of Cymbalta's extremely

short half-life, Lilly misleadingly referenced all other SSRIs and SNRIs, as if Cymbalta could be

expected to pose a similar risk of withdrawal as all other drugs of its class generally:

> During marketing of other SSRIs and SNRIs (Serotonin and Norepinephrine Reuptake
> Inhibitors), there have been spontaneous reports of adverse events occurring upon
> discontinuation of these drugs, particularly when abrupt, including the following:
> dysphoric mood, irritability, agitation, dizziness, sensory disturbances (e.g.
> paresthesias such as electric shock sensations), anxiety, confusion, headache, lethargy,
> emotional liability, insomnia, hypomania, tinnitus, and seizures. Although these events
> are generally self-limiting, some have been reported to be severe.
> (2004 Cymbalta label.)

63.   The extremely short half-life of Cymbalta should have alerted Lilly's researchers to

the fact that the risk of Cymbalta withdrawal would be more frequent than that experienced with

other SSRIs and SNRIs.

64.   In addition, Lilly failed to effectively quantify Cymbalta's half-life, so users could

compare Cymbalta's risk of withdrawal against other antidepressants and neuropathic pain

treatments.  Specifically, Cymbalta's half-life is approximately 12 hours, whereas other

antidepressants such as Prozac (4-6 days), Celexa (35 hours), Zoloft (26 hours), and Paxil (21 hours)

have significantly longer half-lives.  Lilly did not adequately warn patients and prescribers that

Cymbalta posed a significantly higher risk of withdrawal as compared to other competing medications.  The results created a false impression that Cymbalta posed the same risk of withdrawal as other antidepressants—a fact that is patently demonstrably incorrect.

65.   Lilly was aware of the significance of antidepressant withdrawal because Lilly had previously researched and publicized the issue in connection with its antidepressant Prozac.  Because Prozac has a longer half-life relative to other antidepressants, the length of time it takes for a person's body to fully eliminate Prozac from the system provides a built-in gradual tapering of sorts, so that withdrawal symptoms from Prozac are relatively infrequent.  Prozac's main competitors in the 1990s, Zoloft and Paxil, had shorter half-lives, and Lilly engineered a campaign to differentiate Prozac from its competitors on this basis, funding clinical studies of antidepressant withdrawal and coining the term "antidepressant discontinuation syndrome."

66.   Researchers, including Lilly's own consultants, have postulated that withdrawal reactions result from a sudden decrease in the availability of synaptic serotonin in the face of down-regulated serotonin receptors.  *See* Schatzberg et al., *Possible mechanisms of the serotonin reuptake inhibitor discontinuation syndrome*, J. CLIN PSYCHIATRY 58 (suppl7): 23–7 (1997); Blier and Tremblay, *Physiological mechanisms underlying the anti-depressant discontinuation syndrome*, J CLIN PSYCHIATRY 67 (suppl4) (2006): 8–13.  They have theorized that, upon chronic dosing, the increased occupancy of pre-synaptic serotonin receptors signals the pre-synaptic neuron to synthesize and release less serotonin.

67.   Serotonin levels within the synapse drop, then rise again, ultimately leading to down-regulation of post-synaptic serotonin receptors.  In other words, as SSRIs and SNRIs block the reuptake of serotonin and norepinephrine, structural changes in the brain occur such that production of these neurotransmitters is reduced.  These changes in the brain's architecture may contribute to

withdrawal symptoms, as a patient is, upon cessation of the drug, left not only with the absence of the drug but also structural changes in the brain that remain for some time even after the drug has been fully washed out of the person's system.  Because of the short half-life of Cymbalta, the brain has even less time to adjust to the cessation of Cymbalta treatment.  Despite Lilly's knowledge of this phenomenon, Lilly did not include in Cymbalta's label or promotional materials any information regarding the increased risk of withdrawal due to structural changes in the brain exacerbated by Cymbalta's short half-life.

68.  As Lilly was fully aware of the issue of antidepressant withdrawal and of Cymbalta's elevated withdrawal risk, Lilly not only should have included a strong warning to physicians and patients, but it should have also designed the drug in such a way that would easily allow for a gradual tapering off of the drug.  Instead, Cymbalta is only manufactured as a delayed-release capsule filled with tiny beads at 20, 30 and 60 mg doses, and Cymbalta's label as well as it's Medication Guide each instruct physicians and patients that the capsule "should be swallowed whole and should not be chewed or crushed, nor should the capsule be opened and its contents be sprinkled on food or mixed with liquids."  In contrast, other SSRIs and SNRIs are available as scored tablets that can be halved and quartered with relative ease, or are available in liquid form which can be measured and dispensed in small increments.

69.  The warning label for Cymbalta with regard to withdrawal risks has changed slightly from year to year.  Generally, Cymbalta's label provided the following precaution regarding stopping Cymbalta:

> Discontinuation symptoms have been systematically evaluated in patients taking duloxetine. Following abrupt or tapered discontinuation in placebo-controlled clinical trials, the following symptoms occurred at a rate greater than or equal to 1% and at a significantly higher rate in duloxetine-treated patients compared to those discontinuing from placebo: dizziness, nausea, headache, fatigue, paresthesia, vomiting, irritability, nightmares, insomnia, diarrhea, anxiety, hyperhidrosis and vertigo . . . .

70.   Cymbalta's label also provided the following instructions for stopping Cymbalta:

A gradual reduction in the dose rather than abrupt cessation is recommended whenever possible. If intolerable symptoms occur following a decrease in the dose or upon discontinuation of treatment, then resuming the previously prescribed dose may be considered. Subsequently, the physician may continue decreasing the dose but at a more gradual rate.

71.   In addition to using the euphemistic term "discontinuation" to describe Cymbalta's withdrawal symptoms, the label did not accurately reflect that a significant percentage of Cymbalta users suffered from withdrawal symptoms.  Rather, the warnings suggested that Cymbalta withdrawal was, in fact, rare, or occurred at a rate of approximately one (1) percent.  However, Lilly's own studies, published as a January 2005 article in the Journal of Affective Disorders, showed that, at a minimum, between 44.3% and 50% of Cymbalta patients suffered from "discontinuation" side effects (i.e., withdrawal symptoms).[1]  The article also noted that the withdrawal symptom data compiled during Lilly's clinical trials was gathered from "spontaneous reports" of symptoms (patients volunteering symptoms), and not using the far more accurate "symptom checklist."  The authors acknowledge that use of a symptom checklist would likely produce even higher incidence rates of withdrawal symptoms.  David G. Perahia et al., *Symptoms Following Abrupt Discontinuation of Duloxetine Treatment in Patients with Major Depressive Disorder*, 89 J.  AFFECTIVE DISORDERS 207, 207–12 (2005).  Notwithstanding, Lilly omitted this critical information from its label, instead misleadingly stating only that certain symptoms are experienced at a rate of 1% / 2% or greater, suggesting that Cymbalta withdrawal is rare or infrequent.

72.   Moreover, Lilly's clinical trials showed that, overall, between 9.6% and 17.2% of Cymbalta users suffered *severe* withdrawal symptoms, yet nowhere in the label does Lilly inform practitioners and patients of that risk.

---

[1] Indeed, the Cymbalta warning label in Europe states that "In clinical trials adverse events seen on abrupt treatment discontinuation occurred in approximately 45% of patients treated with Cymbalta[.]"  Nowhere in the U.S. label is this 45% risk disclosed.

73.   Cymbalta's withdrawal symptoms include, among other things, headaches, dizziness, nausea, fatigue, diarrhea, paresthesia, vomiting, irritability, nightmares, insomnia, anxiety, hyperhidrosis, sensory disturbances, electric shock sensations, seizures, and vertigo.  When users cease ingesting Cymbalta, the side effects can be severe enough to force them to start taking Cymbalta again, not to treat their underlying conditions, but simply to stop the withdrawal symptoms. Users become prisoners to Cymbalta and Lilly financially benefits by having a legion of physically dependent long-term users of Cymbalta.

74.   As set forth above, the design of Cymbalta pills, as delayed-release capsules only filled with tiny beads at 20, 30 and 60 mg doses, along with the instruction to swallow them whole, prevents users from properly tapering (gradually decreasing their dosage) from Cymbalta in order to avoid or reduce withdrawal symptoms.  The actual design of the Cymbalta pill prohibits users from being able to safely taper off the medication.

75.   Despite Lilly's knowledge of the extremely high rate of withdrawal symptoms in users stopping Cymbalta, Lilly neither provided adequate instructions to users and physicians for stopping Cymbalta nor included adequate warnings in its product label, marketing, or advertising to fully and accurately inform users and physicians about the frequency, severity, and duration of the withdrawal symptoms.

76.   Lilly's misleading direct-to-consumer promotional campaigns and its failure to adequately warn users and physicians about the frequency, severity, and duration of Cymbalta's withdrawal symptoms have paid off financially for Lilly.  Cymbalta became a "blockbuster" drug with over $3.9 billion dollars in annual sales.  In the past few years, Cymbalta has either been the most profitable or second most profitable drug in Lilly's product line.  Lilly had the knowledge, the means, and the duty to provide adequate instructions for stopping Cymbalta and adequate warnings about the frequency, severity, and duration of Cymbalta's withdrawal symptoms.  Lilly could have relayed these instructions and warnings through the same means it utilized to promote its products, which included but are not limited to its labeling, "Dear Doctor letters," advertisements, and sales representatives.

77.   Falsely reassured by the misleading manner in which Lilly reported Cymbalta's withdrawal symptoms, physicians, including Plaintiffs' physicians, have prescribed and continue to prescribe Cymbalta to patients without adequate instructions for stopping Cymbalta and without adequate warnings that fully and accurately inform them about the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

78.   At all times relevant, Lilly knew, or should have known, of the significantly increased risk of withdrawal symptoms, including their severity and duration, posed by Cymbalta and yet failed to adequately warn the public and physicians prescribing Cymbalta to the public about said risks.

79.   Plaintiffs' use of the drug and their consequent injuries and damages were a direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

## PLAINTIFFS' INDIVIDUAL ALLEGATIONS

80.   Plaintiffs' incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

81.   As a direct and proximate result of taking Cymbalta, Plaintiffs suffered compensable injuries, including but not limited to the following:

   a.   physical, emotional, and psychological injuries;

   b.   past and future pain and suffering;

   c.   past and future mental anguish;

   d.   loss of enjoyment of life; and

   e.   past and future medical and related expenses.

## I.   PLAINTIFF YVETTE BEARD

82.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all

of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard's physicians.

83.   Plaintiff Yvette Beard's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

84.   Plaintiff Yvette Beard's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

85.   In or around January 2006, Plaintiff Yvette Beard was prescribed Cymbalta by her physician, as treatment for depression and as a sleep aid.

86.   In or around January 2012, Plaintiff Yvette Beard discontinued ingestion of Cymbalta.

87.   Plaintiff Yvette Beard experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, paresthesia, tingling and numbness in hands and legs, brain zaps, skin rashes/irritations, dizziness, nausea, vomiting, insomnia and fatigue. Symptoms were worse in the right side of her body.

88.   In or around August 2012, Plaintiff Yvette Beard, after reporting her discontinuation symptoms to her physician, was advised by her physician to resume taking Cymbalta  to help her symptoms go away.

89.   As a consequence, Plaintiff Yvette Beard must remain on Cymbalta in order to avoid discontinuation symptoms associated with discontinuing ingestion of Cymbalta.

90.  If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Yvette Beard's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Yvette Beard would have refused the drug, and (c) Plaintiff Yvette Beard's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## II.    PLAINTIFF TERRY BROWN

91.  At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, and Plaintiff Terry Brown's physicians.

92.  Plaintiff Terry Brown's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

93.  Plaintiff Terry Brown's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

94.  In or around January 2014, Plaintiff Terry Brown was prescribed Cymbalta by his physician, as treatment for depression and chronic pain.

95.  In or around May 2014, Plaintiff Terry Brown completely tapered off of Cymbalta.

96.  Plaintiff Terry Brown experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, dizziness, nausea, vomiting, extreme headaches, diarrhea, rashes, sensitivity to sunlight, extreme sweats on a daily basis, and psychological disturbances.

97.  If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Terry Brown's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Terry Brown would have refused the drug, and (c) Plaintiff Terry Brown's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

### III.      PLAINTIFF THERESA CARR

98.  At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, and Plaintiff Theresa Carr's physicians.

99.  Plaintiff Theresa Carr's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

100.  Plaintiff Theresa Carr's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate

instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

101.   In or around January 2010, Plaintiff Theresa Carr was prescribed Cymbalta by her physician, as treatment for depression, pain and anxiety.

102.   In or around January 2013, Plaintiff Theresa Carr completely tapered off of Cymbalta.

103.   Plaintiff Theresa Carr experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including brain zaps, extreme agitation, extreme mood swings, headaches, diarrhea, skin rashes/irritations, dizziness, psychological disturbances, insomnia, and fatigue.

104.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Theresa Carr's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Theresa Carr would have refused the drug, and (c) Plaintiff Theresa Carr's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## IV.   PLAINTIFF LINDA COLES

105.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, and Plaintiff Linda Coles' physicians.

106. Plaintiff Linda Coles' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

107. Plaintiff Linda Coles' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

108. In or around May 2013, Plaintiff Linda Coles was prescribed Cymbalta by her physician, as treatment for depression and chronic pain.

109. In or around November 2013, Plaintiff Linda Coles discontinued ingestion of Cymbalta.

110. Plaintiff Linda Coles experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, dizziness, headaches and fatigue.

111. If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Linda Coles' physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Linda Coles would have refused the drug, and (c) Plaintiff Linda Coles' physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## V. PLAINTIFF DONNA COLGAN

112. At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public

regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr and Plaintiff Donna Colgan's physicians.

113.   Plaintiff Donna Colgan's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

114.   Plaintiff Donna Colgan's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

115.   In or around January 2006, Plaintiff Donna Colgan was prescribed Cymbalta by her physician as treatment for depression, bi-polar disorder and Posttraumatic Stress Disorder (PTSD).

116.   In or around January 2013, Plaintiff Donna Colgan discontinued ingestion of Cymbalta.

117.   Plaintiff Donna Colgan experienced severe and dangerous withdrawal symptoms upon discontinuing Cymbalta, including brain zaps, body shakes, headaches, and disorientation.

118.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Donna Colgan's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Donna Colgan would have refused the drug, and (c) Plaintiff Donna Colgan's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## VI.    PLAINTIFF MARIA DEVILLE

119.    At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan and Plaintiff Maria Deville's physicians.

120.    Plaintiff Maria Deville's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

121.    Plaintiff Maria Deville's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

122.    In or around September 2010, Plaintiff Maria Deville was prescribed Cymbalta by her physician, as treatment for depression.

123.    In or around June 2014, Plaintiff Maria Deville completely tapered off of Cymbalta.

124.    Plaintiff Maria Deville experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, nausea, vomiting, dizziness, headaches, paresthesia, sensitivity to sunlight, insomnia, fatigue, muscle spasms and seizures.

125.    If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Maria Deville's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Maria Deville would have refused the drug, and (c) Plaintiff Maria Deville's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## VII.    PLAINTIFF BILLY GEORGE DUGGAR

126.    At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville and Plaintiff Billy George Duggar's physicians.

127.    Plaintiff Billy George Duggar's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

128.    Plaintiff Billy George Duggar's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's

withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

129.   In or around January 2010, Plaintiff Billy George Duggar was prescribed Cymbalta by his physician, as treatment for pain and depression.

130.   In or around March 2013, Plaintiff Billy George Duggar completely tapered off of Cymbalta.

131.   Plaintiff Billy George Duggar experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including sweating, nausea, extreme mood swings, dizziness, rashes/skin irritations, sensitivity to sunlight, nightmares, hyperhidrosis, insomnia, fatigue, and could hear birds chirping in his head non-stop, around the clock.

132.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Billy George Duggar's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Billy George Duggar's would have refused the drug, and (c) Plaintiff Billy George Duggar's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## VIII.   PLAINTIFF FRANCES BERNADETTE FORRESTER

133.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff

Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr,  Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff Billy George Duggar and Plaintiff Frances Bernadette Forrester's physicians.

134.  Plaintiff Frances Bernadette Forrester's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

135.  Plaintiff Frances Bernadette Forrester's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

136.  In or around January 2006, Plaintiff Frances Bernadette Forrester was prescribed Cymbalta by her physician, as treatment for bipolar disorder.

137.  In or around September 2014, Plaintiff Frances Bernadette Forrester discontinued ingestion of Cymbalta.

138.  Plaintiff Frances Bernadette Forrester experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, dizziness, nausea, headaches, diarrhea, paresthesia, irritations, sensitivity to sunlight, nightmares, insomnia, and excessive sweating.

139.  If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Frances Bernadette Forrester's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Frances Bernadette Forrester would have refused

the drug, and (c) Plaintiff Frances Bernadette Forrester's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## IX.   PLAINTIFF RICHARD JOSEPH KASCHAK

140.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff Billy George Duggar,  Plaintiff Frances Bernadette Forrester, and Plaintiff  Richard Joseph Kaschak's physicians.

141.   Plaintiff Richard Joseph Kaschak's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

142.   Plaintiff Richard Joseph Kaschak's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

143.  In or around January 2013, Plaintiff Richard Joseph Kaschak was prescribed Cymbalta by his physician, as treatment for neuropathy.

144.  In or around January 2013, Plaintiff Richard Joseph Kaschak discontinued ingestion of Cymbalta.

145.  Plaintiff Richard Joseph Kaschak experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including dizziness, problems maintaining balance, hyperhidrosis, high fever, and skin rashes/irritation.

146.  If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Richard Joseph Kaschak's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Richard Joseph Kaschak would have refused the drug, and (c) Plaintiff Richard Joseph Kaschak's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## X.      PLAINTIFF BILLIE JANE LEE

147.  At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar,  Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, and Billie Jane Lee's physicians.

148.   Plaintiff Billie Jane Lee's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

149.   Plaintiff Billie Jane Lee's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

150.   In or around September 2009, Plaintiff Billie Jane Lee was prescribed Cymbalta by her physician as treatment for mood swings and depression.

151.   In or around January 2013, Plaintiff Billie Jane Lee attempted to discontinued ingestion of Cymbalta.

152.   Plaintiff Billie Jane Lee experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including dizziness, paresthesia, problems maintaining balance/instability, nausea, extreme mood swings, headaches, and vomiting.

153.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Billie Jane Lee's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Billie Jane Lee would have refused the drug, and (c) Plaintiff Billie Jane Lee's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

///

///

## XI.   PLAINTIFF ESSIE ANTONIO MITCHELL

154.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar,  Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, and Plaintiff Essie Antonio Mitchell's physicians.

155.   Plaintiff Essie Antonio Mitchell's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

156.   Plaintiff Essie Antonio Mitchell's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

157.   In or around January 2013, Plaintiff Essie Antonio Mitchell was prescribed Cymbalta by his physician as treatment for depression and anxiety.

158.   In or around April 2013, Plaintiff Essie Antonio Mitchell discontinued ingestion of Cymbalta.

159.   Plaintiff Essie Antonio Mitchell experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including diarrhea, nausea, vomiting, extreme mood swings, brain zaps, headaches, sensitivity to sunlight, dizziness, paresthesia, insomnia, and

28

fatigue.

160.  If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Essie Antonio Mitchell's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Essie Antonio Mitchell would have refused the drug, and (c) Plaintiff Essie Antonio Mitchell's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XII.    PLAINTIFF DAMIEN MOORE

161.  At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, and Plaintiff Damien Moore's physicians.

162.  Plaintiff Damien Moore's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

163.  Plaintiff Damien Moore's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate

instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

164.   In or around May 2010, Plaintiff Damien Moore was prescribed Cymbalta by his physician, as treatment for depression and pain.

165.   In or around October 2012, Plaintiff Damien Moore completely tapered off of Cymbalta.

166.   Plaintiff Damien Moore experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including tingling (like electric shocks), pain, dizziness, anxiety, nausea, headaches, diarrhea and fatigue.

167.   In or around October 2012, Plaintiff Damien Moore again commenced ingesting Cymbalta due to the fact that the withdrawal effects were too painful.

168.   In or around April 2013, Plaintiff Damien Moore tapered off of Cymbalta again because he experience the same painful side effects both while ingesting Cymbalta and after discontinuation.

169.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Damien Moore's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Damien Moore would have refused the drug, and (c) Plaintiff Damien Moore's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

### XIII.   TINA MARIE ROBINSON

170.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public

regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, and Plaintiff Tina Marie Robinson's physicians.

171.   Plaintiff Tina Marie Robinson's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

172.   Plaintiff Tina Marie Robinson's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

173.   In or around January 2004, Tina Marie Robinson was prescribed Cymbalta by her physician, as treatment for depression.

174.   In or around August 2014, Tina Marie Robinson discontinued ingestion of Cymbalta.

175.   Plaintiff Tina Marie Robinson experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, headaches,

paresthesia, nausea, diarrhea, sensitivity to sunlight, and nightmares.

176.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Tina Marie Robinson's physician would not have prescribed the drug to Plaintiff, (b) Tina Marie Robinson would have refused the drug, and (c) Plaintiff Tina Marie Robinson's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XIV.   PLAINTIFF AMY THOMAS

177.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, and Plaintiff Amy Thomas' physicians.

178.   Plaintiff Amy Thomas' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

179.   Plaintiff Amy Thomas' use of the drug and consequent injuries and damages were

the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

180.   In or around January 2006, Plaintiff Amy Thomas was prescribed Cymbalta by her physician as treatment for depression and anxiety.

181.   In or around March 2014, Plaintiff Amy Thomas completed her taper off of Cymbalta.

182.   Plaintiff Amy Thomas experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including seizures.

183.   In or around March 2014, Plaintiff Amy Thomas was hospitalized for seizures which occurred as a direct result of Cymbalta withdrawal.

184.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Amy Thomas' physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Amy Thomas' physician would have refused the drug, and (c) Plaintiff Amy Thomas' physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages. Additionally, but for Lilly's actions Plaintiff Amy Thomas would not have been hospitalized for seizures relating to her withdrawal from Cymbalta.

## XV.   PLAINTIFF JOYCE WHITE

185.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all

of which induced physicians to prescribe Cymbalta and consumers to use it, Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, and Plaintiff Joyce White's physicians.

186.   Plaintiff Joyce White's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

187.   Plaintiff Joyce White's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

188.   In or around May 8, 2014, Plaintiff Joyce White was prescribed Cymbalta by her physician, as treatment for anxiety.

189.   In or around October 2014, Plaintiff Joyce White completely tapered off of Cymbalta.

190.   Plaintiff Joyce White experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including diarrhea, nausea/vomiting, extreme mood swings, brain zaps, headaches, sensitivity to sunlight, dizziness, paresthesia, insomnia, and fatigue.

34

191.  If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Joyce White's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Joyce White would have refused the drug, and (c) Plaintiff Joyce White's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XVI.   PLAINTIFF MICHAEL WORL

192.  At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White, and Plaintiff Michael Worl's physicians.

193.  Plaintiff Michael Worl's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

194.  Plaintiff Michael Worl's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's

withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

195.   In or around June 2013, Plaintiff Michael Worl was prescribed Cymbalta by her physician, as treatment for neuropathy.

196.   In or around July 2013, Plaintiff Michael Worl discontinued ingestion of Cymbalta.

197.   Plaintiff Michael Worl experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including suicidal thoughts, dizziness, nausea, vomiting, extreme mood swings, headaches, diarrhea, paresthesia, nightmares, insomnia, fatigue, and hyperhidrosis.

198.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Michael Worl's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Michael Worl would have refused the drug, and (c) Plaintiff Michael Worl's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

### XVII.   PLAINTIFF TINA FORBES

199.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore,

Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, and Plaintiff Tina Forbes' physicians.

200.  Plaintiff Tina Forbes' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

201.  Plaintiff Tina Forbes' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

202.  In or around August 2012, Plaintiff Tina Forbes was prescribed Cymbalta by her physician, as treatment for depression, fibromyalgia and pain.

203.  In or around July 2014, Plaintiff Tina Forbes completely tapered off of Cymbalta.

204.  Plaintiff Tina Forbes experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including severe brain zaps, nausea, headaches, blurry vision, heart palpitations and changes in mood

205.  If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Tina Forbes' physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Tina Forbes would have refused the drug, and (c) Plaintiff Tina Forbes' physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XVIII.    PLAINTIFF TERESA KELLY

206.  At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, and Plaintiff Teresa Kelly's physicians.

207.  Plaintiff Teresa Kelly's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

208.  Plaintiff Teresa Kelly's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

209.  In or around August 2010, Plaintiff Teresa Kelly was prescribed Cymbalta by her physician, as treatment for chronic pain and headaches.

210.   In or around October 2013, Plaintiff Teresa Kelly completely tapered off of Cymbalta.

211.   Plaintiff Teresa Kelly experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including brain zaps, vertigo, dizziness, lethargy, and sensory sensitivity.

212.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Teresa Kelly's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Teresa Kelly would have refused the drug, and (c) Plaintiff Teresa Kelly's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XIX.   PLAINTIFF NEIL SCHAFFER

213.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, and Plaintiff Neil Schaffer's physicians.

214.   Plaintiff Neil Schaffer's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and

accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

215.   Plaintiff Neil Schaffer's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

216.   In or around January 2009, Plaintiff Neil Schaffer was prescribed Cymbalta by his physician, as treatment for anxiety.

217.   In or around February 2013, Plaintiff Neil Schaffer discontinued ingestion of Cymbalta.

218.   Plaintiff Neil Schaffer experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, anxiety, anger, rage, brain zaps, sexual dysfunction (unable to perform) and experienced fear of doom or death.

219.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Neil Schaffer physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Neil Schaffer would have refused the drug, and (c) Plaintiff Neil Schaffer's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XX.   PLAINTIFF ELAINE SCHERER

220.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all

of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, and Plaintiff Elaine Scherer's physicians.

221.  Plaintiff Elaine Scherer's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

222.  Plaintiff Elaine Scherer's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

223.  In or around February 2011, Plaintiff Elaine Scherer was prescribed Cymbalta by her physician, as treatment for depression.

224.  In or around June 2014, Plaintiff Elaine Scherer discontinued ingestion of Cymbalta.

225.  Plaintiff Elaine Scherer experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including anxiety, brain zaps, lethargy, crying, mood swings, limited sex drive, irritability and skin rashes/irritations/breakouts.

226.  If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their

frequency, severity, and duration, (a) Plaintiff Elaine Scherer's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Elaine Scherer would have refused the drug, and (c) Plaintiff Elaine Scherer's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XXI.   PLAINTIFF JUDY BRANT

227.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer and Plaintiff Judy Brant's physicians.

228.   Plaintiff Judy Brant's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

229.   Plaintiff Judy Brant's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and

accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

230.   In or around January 2011, Plaintiff Judy Brant was prescribed Cymbalta by her physician, as treatment for fibromyalgia.

231.   In or around October 2014, Plaintiff Judy Brant completely tapered off of Cymbalta.

232.   Plaintiff Judy Brant experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including irritability, mood swings, brain zaps, headaches, insomnia, fatigue, paresthesia, and hyperhidrosis.

233.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Judy Brant's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Judy Brant would have refused the drug, and (c) Plaintiff Judy Brant's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XXII.        PLAINTIFF MARIA ANTOINETTE COLLIER

234.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard

Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore,
Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl,
Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff
Judy Brant, and Plaintiff Maria Antoinette Collier's physicians.

235.   Plaintiff Maria Antoinette Collier's use of the drug and consequent injuries and
damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to
provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that
fully and accurately inform users and physicians of the frequency, severity, and duration of
Cymbalta's withdrawal symptoms.

236.   Plaintiff Maria Antoinette Collier's use of the drug and consequent injuries and
damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to
provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that
fully and accurately inform users and physicians of the frequency, severity, and/or duration of
Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of
her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

237.   In or around January 2004, Plaintiff Maria Antoinette Collier was prescribed
Cymbalta by her physician, as treatment for depression.

238.   In or around January 2014, Plaintiff Maria Antoinette Collier discontinued ingestion
of Cymbalta.

239.   Plaintiff Maria Antoinette Collier experienced severe and dangerous withdrawal
symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, brain zaps,
headaches, dizziness, paresthesia, sensitivity to sunlight, nightmares, fatigue, and hyperhidrosis.

240.   If Lilly had properly designed and adequately, accurately, and properly warned about

the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Maria Antoinette Collier's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Maria Antoinette Collier would have refused the drug, and (c) Plaintiff Maria Antoinette Collier's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XXIII.        PLAINTIFF DORIS PORTER EDWARDS

241.  At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier and Plaintiff  Doris Porter Edwards' physicians.

242.  Plaintiff Doris Porter Edwards' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

243.   Plaintiff Doris Porter Edwards' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

244.   In or around January 2013, Plaintiff Doris Porter Edwards was prescribed Cymbalta by her physician, as treatment for arthritis pain and stress.

245.   In or around August 2013, Plaintiff Doris Porter Edwards completely tapered off of Cymbalta.

246.   Plaintiff Doris Porter Edwards experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including nausea and vomiting.

247.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Doris Porter Edwards' physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Doris Porter Edwards would have refused the drug, and (c) Plaintiff Doris Porter Edwards' physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XXIV.      PLAINTIFF DAVID SCOTT FOSTER

248.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and

46

accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards and Plaintiff David Scott Foster's physicians.

249.  Plaintiff David Scott Foster's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

250.  Plaintiff David Scott Foster's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion

47

and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

251.   In or around January 2007, Plaintiff David Scott Foster was prescribed Cymbalta by his physician, as treatment for depression and pain.

252.   In or around February 2013, Plaintiff David Scott Foster completely tapered off of Cymbalta.

253.   Plaintiff David Scott Foster experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, suicidal thoughts/ideations, brain zaps, dizziness, continual ringing in ears, and nightmares.

254.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff David Scott Foster's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff David Scott Foster would have refused the drug, and (c) Plaintiff David Scott Foster's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XXXII.      PLAINTIFF JOSE RUBEN GALVAN

255.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard

Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, and Plaintiff Jose Ruben Galvan's physicians.

256.   Plaintiff Jose Ruben Galvan's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

257.   Plaintiff Jose Ruben Galvan's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

258.   In or around January 2010, Plaintiff Jose Ruben Galvan was prescribed Cymbalta by his physician, as treatment for pain.

259.   In or around November 2013, Plaintiff Jose Ruben Galvan discontinued ingestion of Cymbalta.

260.   Plaintiff Jose Ruben Galvan experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, brain zaps, insomnia, dizziness, nausea, headaches, paresthesia in legs, arms, feet and back, sensitivity to

sunlight, and hyperhidrosis.

261.  In or around December 2013, Plaintiff Jose Ruben Galvan, after reporting his discontinuation symptoms to his physician, was advised by his physician to resume taking Cymbalta in order to help his symptoms go away.

262.  As a consequence, Plaintiff Jose Ruben Galvan must remain on Cymbalta in order to avoid discontinuation symptoms associated with discontinuing ingestion of Cymbalta.

263.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Jose Ruben Galvan's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Jose Ruben Galvan would have refused the drug, and (c) Plaintiff Jose Ruben Galvan's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XXXIII.        PLAINTIFF ANGELA HALEY

264.  At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl,

Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, and Plaintiff Angela Haley's physicians.

265.   Plaintiff Angela Haley's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

266.   Plaintiff Angela Haley's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

267.   In or around March 2014, Plaintiff Angela Haley was prescribed Cymbalta by her physician, as treatment for stress and insomnia.    In or around May 2014, Plaintiff Angela Haley discontinued ingestion of Cymbalta.  Plaintiff Angela Haley experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including chest pains, inability to breathe, fingers "felt funny," sweating, shaking, and heart pounding.

268.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Angela Haley's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Angela Haley would have refused the drug, and (c) Plaintiff Angela

Haley's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

### XXXIV.     PLAINTIFF WILLIAM EARL HOLLY

269.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, and Plaintiff  William Earl Holly's physicians.

270.   Plaintiff William Earl Holly's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

271.   Plaintiff William Earl Holly's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide

adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

272.   In or around January 2009, Plaintiff William Earl Holly was prescribed Cymbalta by his physician, as treatment for depression.

273.   In or around March 2009, Plaintiff William Earl Holly completely tapered off of Cymbalta.

274.   Plaintiff William Earl Holly experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, brain zaps, dizziness, nausea/vomiting, headaches, diarrhea, paresthesia, rashes/irritations, sensitivity to sunlight, nightmares, insomnia, fatigue, and hyperhidrosis.

275.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, Plaintiff William Earl Holly's physician would not have prescribed the drug to Plaintiff; Plaintiff William Earl Holly would have refused the drug; and Plaintiff William Earl Holly's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XXXV.        PLAINTIFF LEWIS BRYANT HORNE

276.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff

Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria

Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard

Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore,

Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl,

Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff

Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott

Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, and

Plaintiff Lewis Bryant Horne's physicians.

277.   Plaintiff Lewis Bryant Horne's use of the drug and consequent injuries and damages

were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide

adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully

and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's

withdrawal symptoms.

278.   Plaintiff Lewis Bryant Horne's use of the drug and consequent injuries and damages

were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide

adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully

and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's

withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion

and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

279.   In or around January 2012, Plaintiff Lewis Bryant Horne was prescribed Cymbalta

by his physician, as treatment for depression.

280.   In or around November 2012, Plaintiff Lewis Bryant Horne discontinued ingestion of

Cymbalta.

281.  Plaintiff Lewis Bryant Horne experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including paresthesia, extreme mood swings, dizziness, nausea, vomiting, headaches, nightmares, insomnia, and hyperhidrosis.

282.  If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Lewis Bryant Horne physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Lewis Bryant Horne would have refused the drug, and (c) Plaintiff Lewis Bryant Horne's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XXXVI.  PLAINTIFF CAROLYN HUMPHREY

283.  At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott

Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff

Lewis Bryant Horne, and Plaintiff Carolyn Humphrey's physicians.

284.   Plaintiff Carolyn Humphrey's use of the drug and consequent injuries and damages

were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide

adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully

and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's

withdrawal symptoms.

285.   Plaintiff Carolyn Humphrey's use of the drug and consequent injuries and damages

were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide

adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully

and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's

withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion

and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

286.   In or around January 2012, Plaintiff Carolyn Humphrey was prescribed Cymbalta by

her physician, as treatment for depression.

287.   In or around May 2014, Plaintiff Carolyn Humphrey completely tapered off of

Cymbalta.

288.   Plaintiff Carolyn Humphrey experienced severe and dangerous withdrawal

symptoms upon attempting to discontinue Cymbalta, including headaches, extreme mood swings, and

psychological disturbances.

289.   If Lilly had properly designed and adequately, accurately, and properly warned about

the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their

frequency, severity, and duration, (a) Plaintiff Carolyn Humphrey's physician would not have

prescribed the drug to Plaintiff, (b) Plaintiff Carolyn Humphrey would have refused the drug, and (c) Carolyn Humphrey's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

### XXXVII.    PLAINTIFF JUSTIN COLLIER HUNT

290.    At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey and Plaintiff Justin Collier Hunt's physicians.

291.  Plaintiff Justin Collier Hunt's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

292.   Plaintiff Justin Collier Hunt's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

293.   In or around January 2009, Plaintiff Justin Collier Hunt was prescribed Cymbalta by his physician, as treatment for depression.

294.   In or around January 2013, Plaintiff Justin Collier Hunt completely tapered off of Cymbalta.

295.   Plaintiff Justin Collier Hunt experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including brain zaps, headaches, extreme mood swings, diarrhea, sensitivity to sunlight, dizziness, psychological disturbances and insomnia.

296.   In or around January 2013, Plaintiff Justin Collier Hunt, after reporting his discontinuation symptoms to his physician, was advised to resume taking Cymbalta by his physician to help his symptoms go away.

297.   Plaintiff Justin Collier Hunt must remain on Cymbalta in order to avoid the severe and dangerous withdrawal symptoms associated with discontinuing ingestion of Cymbalta.

298.   Plaintiff Justin Collier Hunt experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including anxiety, brain zaps, lethargy, crying, mood swings, limited sex drive, irritability and skin rashes/irritations/breakouts.

299.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their

frequency, severity, and duration, (a) Plaintiff Justin Collier Hunt's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Justin Collier Hunt would have refused the drug, and (c) Plaintiff Justin Collier Hunt's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

### XXXVIII.   PLAINTIFF KAREN JUDGE

300.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey,  Plaintiff Justin Collier Hunt and Plaintiff Karen Judge's physicians.

301.   Plaintiff Karen Judge's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

302.   Plaintiff Karen Judge's use of the drug and consequent injuries and damages were the

direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

303.   In or around January 2004, Plaintiff Karen Judge was prescribed Cymbalta by her physician, as treatment for pain and depression.

304.   In or around August 2014, Plaintiff Karen Judge discontinued ingestion of Cymbalta.

305.   Plaintiff Karen Judge experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including brain zaps, burning of the skin, fatigue, flu like symptoms, diarrhea and vomiting.

306.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Karen Judge's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Karen Judge's would have refused the drug, and (c) Plaintiff Karen Judge's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XXXIX.   PLAINTIFF RICHARD LEE LYNCH, JR.

307.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard

Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore,

Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl,

Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff

Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott

Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff

Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen

Judge, and Plaintiff Richard Lee Lynch, Jr.'s physicians.

308.  Plaintiff Richard Lee Lynch, Jr.'s use of the drug and consequent injuries and
damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to
provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that
fully and accurately inform users and physicians of the frequency, severity, and duration of
Cymbalta's withdrawal symptoms.

309.  Plaintiff Richard Lee Lynch, Jr.'s use of the drug and consequent injuries and
damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to
provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that
fully and accurately inform users and physicians of the frequency, severity, and/or duration of
Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of
his ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

310.  In or around January 2005, Plaintiff Richard Lee Lynch, Jr. was prescribed Cymbalta
by his physician, as treatment for depression.

311.  In or around October 2015, Plaintiff Richard Lee Lynch, Jr. discontinued ingestion of
Cymbalta.

312.  Plaintiff Richard Lee Lynch, Jr. experienced severe and dangerous withdrawal
symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, dizziness,

nausea, vomiting, headaches, diarrhea, paresthesia, psychological disturbances, and insomnia.

313.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Richard Lee Lynch, Jr.'s physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Richard Lee Lynch, Jr. would have refused the drug, and (c) Plaintiff Richard Lee Lynch, Jr.'s physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XL.    PLAINTIFF GENE DAVID MCKENZIE

314.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen Judge, Plaintiff Richard Lee Lynch Jr. and Plaintiff Gene David McKenzie's physicians.

315.   Plaintiff Gene David McKenzie's use of the drug and consequent injuries and

damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

316.   Plaintiff Gene David McKenzie's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

317.   In or around July 2013, Plaintiff Gene David McKenzie was prescribed Cymbalta by his physician, as treatment for nerve damage and pain.

318.   In or around October 2014, Gene David McKenzie discontinued ingestion of Cymbalta.

319. Plaintiff Gene David McKenzie experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including nausea, hard time breathing, unable to multitask, and vomiting.

320.   In or around October 2014, Plaintiff Gene David McKenzie, after reporting his discontinuation symptoms to his physician, was advised by his physician to resume taking Cymbalta in order to help his symptoms go away.

321.   As a consequence, Plaintiff Gene David McKenzie must remain on Cymbalta in order to avoid discontinuation symptoms associated with discontinuing ingestion of Cymbalta.

322.   If Lilly had properly designed and adequately, accurately, and properly warned about

the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Gene David McKenzie's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Gene David McKenzie would have refused the drug, and (c) Plaintiff Gene David McKenzie's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XLI.        PLAINTIFF KATHLEEN CLARE MILES

323.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen Judge, Plaintiff Richard Lee Lynch Jr., Plaintiff Gene David McKenzie, and Plaintiff Kathleen Clare Miles' physicians.

324.   Plaintiff Kathleen Clare Miles' use of the drug and consequent injuries and damages

were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

325.  Plaintiff Kathleen Clare Miles' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

326.  In or around January 2009, Kathleen Clare Miles was prescribed Cymbalta by her physician, as treatment for anxiety and panic attacks.

327.  In or around May 2014, Plaintiff Kathleen Clare Miles discontinued ingestion of Cymbalta.

328.  Plaintiff Kathleen Clare Miles experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including nausea and vomiting.

329.  If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Kathleen Clare Miles' physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Kathleen Clare Miles would have refused the drug, and (c) Plaintiff Kathleen Clare Miles physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XLII.        PLAINTIFF MYRNA NOLAN

330.  At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public

65

regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen Judge, Plaintiff Richard Lee Lynch Jr., Plaintiff Gene David McKenzie, Plaintiff Kathleen Clare Miles, and Plaintiff Myrna Nolan's physicians.

331.   Plaintiff Myrna Nolan's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

332.   Plaintiff Myrna Nolan's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

333.   In or around January 2012, Plaintiff Myrna Nolan was prescribed Cymbalta by her physician, as treatment for depression and anxiety.

334.   In or around January 2014, Plaintiff Myrna Nolan completely tapered off of Cymbalta.

335.   Plaintiff Myrna Nolan experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, brain zaps, dizziness, nausea, vomiting, headaches, diarrhea, skin rashes/irritations, paresthesia, sensitivity to sunlight, psychological disturbances, insomnia, fatigue, and hyperhidrosis.

336.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Myrna Nolan's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Myrna Nolan's would have refused the drug, and (c) Plaintiff Myrna Nolan's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XLIII.        PLAINTIFF JACQUELINE FREDIA OSBORNE

337.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore,

Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen Judge, Plaintiff Richard Lee Lynch Jr., Plaintiff Gene David McKenzie, Plaintiff Kathleen Clare Miles, Plaintiff Myrna Nolan, and Plaintiff Jacqueline Fredia Osborne's physicians.

338.   Plaintiff Jacqueline Fredia Osborne's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

339.   Plaintiff Jacqueline Fredia Osborne's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

340.   In or around April 2010, Plaintiff Jacqueline Fredia Osborne was prescribed Cymbalta by her physician, as treatment for depression.

341.   In or around November 2012, Plaintiff Jacqueline Fredia Osborne completely tapered off of Cymbalta.

342.   Plaintiff Jacqueline Fredia Osborne experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, brain zaps,

headaches, paresthesia, sensitivity to sunlight, nightmares, insomnia, and hyperhidrosis.

343. If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Jacqueline Fredia Osborne's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Jacqueline Fredia Osborne would have refused the drug, and (c) Plaintiff Jacqueline Fredia Osborne's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XLIV. PLAINTIFF GALE MARIE PETTIS

344. At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White, Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen Judge, Plaintiff Richard Lee Lynch Jr., Plaintiff Gene David McKenzie, Plaintiff Kathleen Clare Miles, Plaintiff Myrna Nolan, Plaintiff Jacqueline Fredia Osborne and Plaintiff Gale Marie Pettis' physicians.

345.   Plaintiff Gale Marie Pettis' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

346.   Plaintiff Gale Marie Pettis' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

347.   In or around January 2012, Plaintiff Gale Marie Pettis was prescribed Cymbalta by her physician, as treatment for depression.

348.   In or around September 2014, Plaintiff Gale Marie Pettis discontinued ingestion of Cymbalta.

349.   Plaintiff Gale Marie Pettis experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including anxiety, brain zaps, lethargy, crying, mood swings, limited sex drive, irritability and skin rashes/irritations/breakouts.

350.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Gale Marie Pettis' physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Gale Marie Pettis would have refused the drug, and (c) Plaintiff Gale Marie Pettis' physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

///

## XLV.    PLAINTIFF WENDY PRESCOTT

351.  At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen Judge, Plaintiff Richard Lee Lynch Jr., Plaintiff Gene David McKenzie, Plaintiff Kathleen Clare Miles, Plaintiff Myrna Nolan, Plaintiff Jacqueline Fredia Osborne, Plaintiff Gale Marie Pettis, and Plaintiff Wendy Prescott's physicians.

352.  Plaintiff Wendy Prescott's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

353.  Plaintiff Wendy Prescott's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate

instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

354.   In or around 2013 (month to be provided), Plaintiff Wendy Prescott was prescribed Cymbalta by her physician, as treatment for fibromyalgia.

355.   In or around 2013 (month to be provided), Plaintiff Wendy Prescott discontinued ingestion of Cymbalta.

356.   Plaintiff Wendy Prescott experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, brain zaps, nightmares, dizziness, nausea, diarrhea, anxiety, uncontrollable crying and suicidal ideation.

357.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Wendy Prescott's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Wendy Prescott would have refused the drug, and (c) Plaintiff Wendy Prescott's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XLVI.        PLAINTIFF VIOLA LYNN SPURLOCK

358.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard

Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen Judge, Plaintiff Richard Lee Lynch Jr., Plaintiff Gene David McKenzie, Plaintiff Kathleen Clare Miles, Plaintiff Myrna Nolan, Plaintiff Jacqueline Fredia Osborne, Plaintiff Gale Marie Pettis, Plaintiff Wendy Prescott, and Plaintiff Viola Lynn Spurlock's physicians.

359.   Plaintiff Viola Lynn Spurlock's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

360.   Plaintiff Viola Lynn Spurlock's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

361.   In or around January 2009, Plaintiff Viola Lynn Spurlock was prescribed Cymbalta by her physician, as treatment for depression.

362.   In or around September 2014, Plaintiff Viola Lynn Spurlock discontinued ingestion of Cymbalta.

363.  Plaintiff Viola Lynn Spurlock experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including blurry/bad vision, extreme mood swings, stomachaches, and diarrhea.

364.  If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Viola Lynn Spurlock's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Viola Lynn Spurlock would have refused the drug, and (c) Plaintiff Viola Lynn Spurlock's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XLVII.       PLAINTIFF JACK WOLFE

365.  At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen

Judge, Plaintiff Richard Lee Lynch Jr., Plaintiff Gene David McKenzie, Plaintiff Kathleen Clare

Miles, Plaintiff Myrna Nolan, Plaintiff Jacqueline Fredia Osborne, Plaintiff Gale Marie Pettis,

Plaintiff Wendy Prescott, Plaintiff Viola Lynn Spurlock, and Plaintiff Jack Wolfe's physicians.

366.   Plaintiff Jack Wolfe's use of the drug and consequent injuries and damages were the

direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate

instructions for stopping Cymbalta and its failure to include adequate warnings that fully and

accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's

withdrawal symptoms.

367.   Plaintiff Jack Wolfe's use of the drug and consequent injuries and damages were the

direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate

instructions for stopping Cymbalta and its failure to include adequate warnings that fully and

accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's

withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion

and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

368.   In or around January 2011, Plaintiff Jack Wolfe was prescribed Cymbalta by his

physician, as treatment for neuropathy and pain.

369.   In or around January 2014, Plaintiff Jack Wolfe discontinued completely tapered of

Cymbalta.

370.   Plaintiff Jack Wolfe experienced severe and dangerous withdrawal symptoms upon

attempting to discontinue Cymbalta, including extreme mood swings, dizziness, nausea, headaches,

diarrhea, paresthesia, rashes/irritations, sensitivity to sunlight, nightmares, insomnia, fatigue, and

hyperhidrosis.

371.   If Lilly had properly designed and adequately, accurately, and properly warned about

the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their

frequency, severity, and duration, (a) Plaintiff Jack Wolfe's physician would not have prescribed the

drug to Plaintiff, (b) Plaintiff Jack Wolfe would have refused the drug, and (c) Plaintiff Jack Wolfe's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## XLVIII.      PLAINTIFF WILLIAM FOSTER YOUNG

372.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen Judge, Plaintiff Richard Lee Lynch Jr., Plaintiff Gene David McKenzie, Plaintiff Kathleen Clare Miles, Plaintiff Myrna Nolan, Plaintiff Jacqueline Fredia Osborne, Plaintiff Gale Marie Pettis, Plaintiff Wendy Prescott, Plaintiff Viola Lynn Spurlock, Plaintiff Jack Wolfe, and Plaintiff William Foster Young's physicians.

373.   Plaintiff William Foster Young's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that

fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

374.   Plaintiff William Foster Young's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of his ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

375.   In or around January 2010, Plaintiff William Foster Young was prescribed Cymbalta by his physician, as treatment for depression.

376.   In or around March 2010, Plaintiff William Foster Young discontinued ingestion of Cymbalta.

377.   Plaintiff William Foster Young experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, worse depression than before taking Cymbalta, brain zaps, dizziness, nausea, headaches, diarrhea, paresthesia, skin rashes/irritations, sensitivity to sunlight, nightmares, insomnia, fatigue, rapid heartbeat, and hyperhidrosis.

378.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff William Foster Young's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff William Foster Young would have refused the drug, and (c) Plaintiff William Foster Young's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

///

///

## XLIX.        PLAINTIFF BRITTANY NICKOLE ZABRISKIE

379.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen Judge, Plaintiff Richard Lee Lynch Jr., Plaintiff Gene David McKenzie, Plaintiff Kathleen Clare Miles, Plaintiff Myrna Nolan, Plaintiff Jacqueline Fredia Osborne, Plaintiff Gale Marie Pettis, Plaintiff Wendy Prescott, Plaintiff Viola Lynn Spurlock, Plaintiff Jack Wolfe, Plaintiff William Foster Young, and Plaintiff Brittany Nickole Zabraskie's physicians.

380.   Plaintiff Brittany Nickole Zabraskie's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

381.   Plaintiff Brittany Nickole Zabraskie's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

382.   In or around April 2013, Plaintiff Elaine Scherer was prescribed Cymbalta by her physician, as treatment for depression and anxiety.

383.   In or around November 2013, Plaintiff Brittany Nickole Zabraskie discontinued ingestion of Cymbalta.

384.   Plaintiff Brittany Nickole Zabraskie experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including body shakes, inability to eat, loss of appetite, paresthesia, brain zaps, extreme mood swings, dizziness, nausea, headaches, sensitivity to light, hallucinations, insomnia, fatigue, and hyperhidrosis.

385.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Brittany Nickole Zabraskie's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Brittany Nickole Zabraskie would have refused the drug, and (c) Plaintiff Brittany Nickole Zabraskie's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

### L.      PLAINITFF CAROLYN DESHARNAIS

386.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and

accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen Judge, Plaintiff Richard Lee Lynch Jr., Plaintiff Gene David McKenzie, Plaintiff Kathleen Clare Miles, Plaintiff Myrna Nolan, Plaintiff Jacqueline Fredia Osborne, Plaintiff Gale Marie Pettis, Plaintiff Wendy Prescott, Plaintiff Viola Lynn Spurlock, Plaintiff Jack Wolfe, Plaintiff William Foster Young, Plaintiff Brittany Nickole Zabraskie, and Plaintiff Carolyn Desharnais' physicians.

387.  Plaintiff Carolyn Desharnais' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

388.  Plaintiff Carolyn Desharnais' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion

and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

389.   In or around February 2012, Plaintiff Carolyn Desharnais was prescribed Cymbalta by her physician, as treatment for depression and anxiety.

390.   In or around November 2012, Plaintiff Carolyn Desharnais completely tapered off of Cymbalta.

391.   Plaintiff Carolyn Desharnais experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including vomiting, dizziness, blurred vision, diarrhea, brain zaps, and nightmares.

392.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Carolyn Desharnais' physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Carolyn Desharnais would have refused the drug, and (c) Plaintiff Carolyn Desharnais' physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## LI.   PLAINTIFF ELIZABETH RUSHWORTH

393.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl,

Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen Judge, Plaintiff Richard Lee Lynch Jr., Plaintiff Gene David McKenzie, Plaintiff Kathleen Clare Miles, Plaintiff Myrna Nolan, Plaintiff Jacqueline Fredia Osborne, Plaintiff Gale Marie Pettis, Plaintiff Wendy Prescott, Plaintiff Viola Lynn Spurlock, Plaintiff Jack Wolfe, Plaintiff William Foster Young, Plaintiff Brittany Nickole Zabraskie, Plaintiff Carolyn Desharnais, and Plaintiff Elizabeth Rushworth's physicians.

394.  Plaintiff Elizabeth Rushworth's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

395.  Plaintiff Elizabeth Rushworth's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

396.  In or around October 2007, Plaintiff Elizabeth Rushworth was prescribed Cymbalta by her physician, as treatment for depression.

397.  In or around July 2013, Plaintiff Elizabeth Rushworth discontinued ingestion of Cymbalta.

398.   Plaintiff Elizabeth Rushworth experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including headaches, nausea, numbing in her cheeks and eyes, legs buckling/giving out, difficulty speaking and thinking of the right words to use, memory loss, and more frequent and worse seizures than before she began ingestion of Cymbalta.

399.   If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Elizabeth Rushworth's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Elizabeth Rushworth's would have refused the drug, and (c) Plaintiff Elizabeth Rushworth's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## LII.   PLAINTIFF LEASA SKAGGS

400.   At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen Judge, Plaintiff Richard Lee Lynch Jr., Plaintiff Gene David McKenzie, Plaintiff Kathleen Clare

Miles, Plaintiff Myrna Nolan, Plaintiff Jacqueline Fredia Osborne, Plaintiff Gale Marie Pettis, Plaintiff Wendy Prescott, Plaintiff Viola Lynn Spurlock, Plaintiff Jack Wolfe, Plaintiff William Foster Young, Plaintiff Brittany Nickole Zabraskie, Plaintiff Carolyn Desharnais, Plaintiff Elizabeth Rushworth, and Plaintiff Leasa Skaggs' physicians.

401.   Plaintiff Leasa Skaggs' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

402.   Plaintiff Leasa Skaggs' use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

403.   In or around February 2005, Plaintiff Leasa Skaggs was prescribed Cymbalta by her physician, as treatment for fibromyalgia.

404.   In or around July 2014, Plaintiff Leasa Skaggs completely tapered off of Cymbalta.

405.   Plaintiff Leasa Skaggs experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, brain zaps, sensitivity to light and noise, depression, insomnia, fatigue and feeling like she is going insane (psychosis).

406.   In or around September of 2014, Plaintiff Leasa Skaggs, after reporting her discontinuation symptoms to his physician, was advised by her physician to resume taking Cymbalta in order to help her symptoms go away.

407.   In or around October 2014, Plaintiff Leasa Skaggs completely tapered off of

Cymbalta again.

408.  Plaintiff Leasa Skaggs again experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, brain zaps, sensitivity to light and noise, depression, insomnia, fatigue and feeling like she is going insane (psychosis).

409.  As a consequence, Plaintiff Leasa Skaggs must remain on Cymbalta in order to avoid discontinuation symptoms associated with discontinuing ingestion of Cymbalta.

410.  If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Leasa Skaggs' physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Leasa Skaggs would have refused the drug, and (c) Plaintiff Leasa Skaggs' physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## LIII.   PLAINTIFF MAVIS RENEE HARPER

411.  At all times relevant, Lilly engaged in negligent, willful, wanton, and reckless conduct, and defectively designed and inadequately warned physicians and the general public regarding its drug, Cymbalta, which conduct includes but is not limited to failure to fully and accurately warn about the frequency, severity, and duration of Cymbalta's withdrawal symptoms, all of which induced physicians to prescribe Cymbalta and consumers to use it, including Plaintiff Yvette Beard, Plaintiff Terry Brown, Plaintiff Theresa Carr, Plaintiff Donna Colgan, Plaintiff Maria Deville, Plaintiff  Billy George Duggar, Plaintiff Frances Bernadette Forrester, Plaintiff  Richard Joseph Kaschak, Plaintiff Billie Jane Lee, Plaintiff Essie Antonio Mitchell, Plaintiff Damien Moore, Plaintiff Tina Marie Robinson, Plaintiff Amy Thomas, Plaintiff Joyce White,  Plaintiff Michael Worl, Plaintiff Tina Forbes, Plaintiff Teresa Kelly, Plaintiff Neil Schaffer, Plaintiff Elaine Scherer, Plaintiff Judy Brant, Plaintiff Maria Antoinette Collier, Plaintiff  Doris Porter Edwards, Plaintiff David Scott

Foster, Plaintiff Jose Ruben Galvan, Plaintiff Angela Haley, Plaintiff  William Earl Holly, Plaintiff Lewis Bryant Horne, Plaintiff Carolyn Humphrey, Plaintiff Justin Collier Hunt, Plaintiff Karen Judge, Plaintiff Richard Lee Lynch Jr., Plaintiff Gene David McKenzie, Plaintiff Kathleen Clare Miles, Plaintiff Myrna Nolan, Plaintiff Jacqueline Fredia Osborne, Plaintiff Gale Marie Pettis, Plaintiff Wendy Prescott, Plaintiff Viola Lynn Spurlock, Plaintiff Jack Wolfe, Plaintiff William Foster Young, Plaintiff Brittany Nickole Zabraskie, Plaintiff Carolyn Desharnais, Plaintiff Elizabeth Rushworth, Plaintiff Leasa Skaggs and Plaintiff Marvis Renee Harper's physicians.

412.   Plaintiff Marvis Renee Harper's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and duration of Cymbalta's withdrawal symptoms.

413.   Plaintiff Marvis Renee Harper's use of the drug and consequent injuries and damages were the direct and proximate result of Lilly's acts and omissions relating to its failure to provide adequate instructions for stopping Cymbalta and its failure to include adequate warnings that fully and accurately inform users and physicians of the frequency, severity, and/or duration of Cymbalta's withdrawal symptoms. The monetary damages occasioned to said plaintiff as a result of her ingestion and use of Cymbalta exceeds $75,000 exclusive of interest or costs.

414.   In or around March 2014, Plaintiff Marvis Renee Harper was prescribed Cymbalta by her physician, as treatment for depression.

415.   In or around July 2014, Plaintiff Marvis Renee Harper discontinued ingestion of Cymbalta.

416.   Plaintiff Marvis Renee Harper experienced severe and dangerous withdrawal symptoms upon attempting to discontinue Cymbalta, including extreme mood swings, dizziness,

nausea, headaches, sensitivity to sunlight, fatigue.  If Lilly had properly designed and adequately, accurately, and properly warned about the withdrawal symptoms associated with stopping Cymbalta, including accurately reporting their frequency, severity, and duration, (a) Plaintiff Elaine Marvis Renee Harper's physician would not have prescribed the drug to Plaintiff, (b) Plaintiff Marvis Renee Harper would have refused the drug, and (c) Plaintiff Marvis Renee Harper's physician would have been able to more adequately, accurately and properly weigh and convey the risks and benefits of the drug in a way as to avoid Plaintiff's injuries and damages.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

417.  Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

418.  Lilly owed to Plaintiffs, and to other consumers and patients, a duty to exercise reasonable care in the design, formulation, manufacture, sale, promotion, supply, and distribution of Cymbalta, including the duty to ensure that the product carries adequate instructions and warnings and that the product does not cause users to suffer from unreasonable, dangerous side effects.

419.  Lilly was negligent in the design, manufacture, testing, advertising, marketing, promoting, labeling, supply, and sale of Cymbalta in that it:

a.      Failed to provide proper warnings that fully and accurately inform users and health care professionals about the frequency, severity, and duration of Cymbalta's withdrawal symptoms;

b.      Failed to provide warnings that Cymbalta could cause users to become physically dependent on the drug;

c.      Failed to provide adequate training and instructions to users and health care professionals regarding appropriate methods for stopping Cymbalta;

d.      Misled users by suggesting that Cymbalta withdrawal was rare;

e.      Failed to warn that the risks associated with Cymbalta exceeded the risks of other comparable forms of treatment options;

f.      Failed to warn of the potential duration of withdrawal symptoms associated with Cymbalta;

g.      Misrepresented the severity of symptoms associated with withdrawal;

h.      Negligently designed Cymbalta in a way that it knew, or should have known, would cause withdrawal and physical dependency and would prevent a patient from being able to safely wean off the medication, such as by designing the Cymbalta pills in a manner that they could easily be separated into halves or quarters;

i.      Negligently marketed Cymbalta without disclosing material information about the frequency, severity, and duration of withdrawal symptoms, despite the fact that the risk of withdrawal symptoms were so high and the benefits of the drug were so questionable that no reasonable pharmaceutical company, exercising due care, would have placed it on the market;

j.      Recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, or concealed, material facts regarding the safety of Cymbalta to Plaintiffs, the public, and the medical community;

k.      Failed to comply with its post-manufacturing duty to warn that Cymbalta was being promoted, distributed, and prescribed without adequate warnings that fully and accurately inform users and physicians of the true frequency, severity, and duration of potential withdrawal symptoms; and

l.      Was otherwise careless, negligent, grossly negligent, reckless, and acted with willful and wanton disregard for Plaintiffs' rights and safety.

420. Despite the fact that Lilly knew, or should have known, that Cymbalta caused frequent and severe withdrawal symptoms, Lilly continued to market Cymbalta to consumers, including Plaintiffs, without adequate instructions for stopping Cymbalta and without adequate warnings about the frequency, severity, and duration of the withdrawal symptoms. Lilly knew, or should have known, that Cymbalta users would suffer foreseeable injuries as a result of its failure to exercise ordinary care, as described above.  Lilly knew, or should have known, that Cymbalta was defective in design or formulation in that, when it left the hands of the manufacturer and suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

421. Had Lilly provided adequate instructions for the proper method for stopping Cymbalta and adequate warnings regarding the frequency, severity, and duration of its withdrawal symptoms, Plaintiffs' injuries would have been avoided.

422.   As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiffs suffered significant injuries as set forth herein.

423.   WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## SECOND CAUSE OF ACTION

## STRICT PRODUCT LIABILITY – DESIGN DEFECT

424.   Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

425.   Lilly is, and was at all times relevant herein, engaged in the business of designing, testing, manufacturing, and promoting prescription medications, including Cymbalta, to citizens of the States of New York, Tennessee, Illinois, Virginia, Louisiana, Ohio, Alabama, South Carolina, Kentucky, including all the Plaintiffs.

426.   Lilly manufactured, marketed, promoted, and sold a product that was merchantable and reasonably suited to the use intended.  Cymbalta was expected to, and did, reach Plaintiffs without substantial change in the condition in which it was sold.  Its condition when sold was the proximate cause of the injuries sustained by Plaintiffs.

427.   Lilly introduced a product into the stream of commerce that was defective in design, in that the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by Lilly, and Lilly's omission of the alternative design renders the product not reasonably safe.  The harm of Cymbalta's design outweighs any benefit derived therefrom.  The unreasonably dangerous nature of Cymbalta caused serious harm to Plaintiffs.  Lilly placed Cymbalta into the stream of commerce with wanton and reckless disregard for public safety.

428.   Lilly knew, or should have known, that physicians and other health care providers began commonly prescribing Cymbalta as a safe product despite the fact that the design of Cymbalta pills, as delayed-release capsules of beads at 20, 30 and 60 mg doses only, along with the instruction

to swallow them whole, prevents users from being able to properly taper (gradual decrease in dosage) from Cymbalta in order to avoid or reduce withdrawal symptoms. Cymbalta users such as Plaintiff are thus unable to avoid the danger of Lilly's design upon cessation of treatment. Moreover, Lilly knew, or should have known, that the likelihood of experiencing withdrawal symptoms (such that gradual tapering would be required) was significant.

429.    Lilly could have redesigned Cymbalta at a reasonable cost in order to allow users to taper gradually and thus with less risk of injury. The risk of harm inherent in Lilly's design of Cymbalta capsules outweighs the utility of its design. There are other antidepressant medications and similar drugs on the market with safer alternative designs with respect to patients' and physicians' ability to gradually decrease the dosage.

430.    As a direct and proximate result of Lilly's widespread promotional activities, physicians commonly prescribe Cymbalta as safe.

431.    As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiffs suffered significant injuries as set forth herein. Plaintiffs have incurred and will continue to incur physical and psychological pain and suffering, emotional distress, sorrow, anguish, stress, shock, and mental suffering. Plaintiffs have required and will continue to require healthcare and services and have incurred, and will continue to incur, medical and related expenses. Plaintiffs have also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.

432.    WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

### THIRD CAUSE OF ACTION: STRICT PRODUCT LIABILITY

### FAILURE TO WARN

433.    Plaintiffs incorporate by reference, as fully set forth herein, all other paragraphs of this Complaint.

434.   Lilly researched, tested, developed, designed, licensed, manufactured, packaged, inspected, labeled, distributed, sold, marketed, promoted and introduced Cymbalta into the stream of commerce and in the course of same, directly advertised and marketed Cymbalta to consumers or persons responsible for consumers, and therefore, had a duty to warn Plaintiffs and Plaintiffs' physicians of the risks associated with stopping Cymbalta, which Lilly knew, or should have known, are inherent in the use of Cymbalta.

435.   Lilly had a duty to warn users and physicians fully and accurately of the frequency, severity, and duration of Cymbalta's withdrawal symptoms which it knew, or should have known, can be caused by the discontinuation of Cymbalta and are associated with Cymbalta discontinuation as explained throughout this Complaint.   Furthermore, Lilly had a duty to provide users and physicians with adequate instructions for stopping Cymbalta.

436.   Cymbalta was under the exclusive control of Lilly and was neither accompanied by adequate instructions for stopping Cymbalta nor accompanied by adequate warnings regarding the frequency, severity, and duration of symptoms associated with the discontinuation of Cymbalta.  The information given to consumers and physicians did not properly instruct users and physicians on how to stop Cymbalta and did not accurately reflect the risk, incidence, symptoms, scope, or severity of the withdrawal symptoms as compared to other similar products available in the market, which possessed lower risk of such symptoms.   The promotional activities of Lilly further diluted and minimized any warnings that were provided with the product.

437.   Lilly misled users and health care professionals as to the severity, frequency, and duration of Cymbalta withdrawal symptoms in order to foster and heighten sales of the product.

438.   Cymbalta was defective and unreasonably dangerous when it left the possession of Lilly in that it contained instructions insufficient to fully inform users and physicians on how to stop Cymbalta and that it contained warnings insufficient to alert Plaintiffs to the dangerous risks and reactions associated with it, including but not limited to severe, debilitating withdrawal symptoms. Although Lilly knew, or should have known, the risks associated with Cymbalta, it failed to provide adequate instructions and warnings.

439.   The foreseeable risks of withdrawal-related harm posed by Cymbalta could have been reduced or avoided by the provision of reasonable instructions or warnings by Lilly.  Lilly's omission of reasonable instructions or warnings rendered Cymbalta not reasonably safe.

440.   Plaintiffs used Cymbalta as intended or in a reasonably foreseeable manner as alleged in this Complaint.

441.   Plaintiffs could not have discovered any defect in the drug through the exercise of reasonable care as the information about the frequency, severity, and duration of withdrawal risks was not readily obtainable by a lay person or medical professional.

442.   Lilly, as the manufacturer of Cymbalta and other pharmaceutical prescription drugs, is held to the level of knowledge of an expert in the field, and further, Lilly had knowledge of the dangerous risks associated with the discontinuation of Cymbalta.

443.   Plaintiffs did not have the same knowledge as Lilly and no adequate warning was communicated to their physicians.

444.   Lilly had a continuing duty to warn users, including Plaintiffs and their physicians, and the medical community of the dangers associated with Cymbalta discontinuation.  By negligently and wantonly failing to provide adequate instructions and failing to adequately warn of the withdrawal symptoms associated with Cymbalta discontinuation, Lilly breached its duty.

445.   Although Lilly knew, or should have known, of Cymbalta's withdrawal symptoms, it continued to design, manufacture, market, and sell the drug without providing adequate warnings or instructions concerning the use of the drug in order to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harms posed by the drug.

446.   In addition, Lilly's conduct in the packaging, warning, marketing, advertising, promoting, distribution, and sale of the drug was committed with knowing, conscious, willful, wanton, and deliberate disregard for the value of human life, and the rights and safety of consumers, including the Plaintiffs.

447.   As a direct and proximate result of one or more of these wrongful acts and omissions

of Lilly, Plaintiffs suffered injuries as set forth herein.

448.   WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## FOURTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

449.   Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

450.   Lilly owed a duty to Plaintiffs and their physicians to convey and communicate truthful and accurate information about Cymbalta and its material risks.

451.   Lilly represented to Plaintiffs, their physicians, and other members of the public and the medical community that Cymbalta was safe for use and that any withdrawal symptoms were no different, no worse, and no more frequent, than those of other similar products on the market.  These representations were, in fact, false.  Lilly's representations on the Cymbalta label suggested that withdrawal was rare, or that withdrawal symptoms occurred at a rate of approximately 1% or 2%, without mentioning the overall percentage of users who will experience withdrawal symptoms, which Lilly's own studies showed to be, at minimum, 44%.

452.   Lilly was negligent in failing to exercise due care in making the aforesaid representations.

453.   Lilly had a pecuniary interest in making said representations, which were made in order to expand sales and increase revenue from Cymbalta.

454.   At the time said representations were made by Lilly, at the time Plaintiffs and their physicians took the actions herein alleged, Plaintiffs and their physicians were ignorant of the falsity of Lilly's representations and reasonably believed them to be true.  In justifiable reliance upon said representations, Plaintiffs and their physicians were induced to, and did, use Cymbalta and attempt to discontinue Cymbalta.  If Plaintiffs and their physicians had known the actual facts, Plaintiffs' injuries would have been avoided because Plaintiffs' physician would not have prescribed the drug,

Plaintiffs would not have taken the drug, and the risk would have been conveyed to Plaintiffs in a way so as to alter the prescription and avoid Plaintiffs' injuries.

455. The reliance of Plaintiffs and their physicians upon Lilly's representations was justified because the representations were made by individuals and entities who appeared to be in a position to know the true facts relating to risks associated with Cymbalta.

456. As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiffs suffered pecuniary losses including but not limited to past and future medical and related expenses.

457. WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## FIFTH CAUSE OF ACTION

### FRAUD

458. Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

459. As the United States Supreme Court stated in *Wyeth v. Levine*, "…it has remained a central premise of federal drug regulation that the manufacturer [of a prescription drug, such as Cymbalta] bears responsibility for the content of its label at all times. It is charged both with crafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market." *Wyeth*, 555 U.S. 555, 571 (2009).

460. Lilly committed fraud by actively concealing material adverse information, that was in its possession, from its labeling and marketing of Cymbalta, including but not limited to, concealing the true frequency, severity, and duration of Cymbalta's withdrawal side effects and falsely represented the withdrawal risk associated with Cymbalta. The specifics of these false representations are contained in this Complaint.

461. Lilly, through its clinical trial data, knew, when it made the misrepresentations and omissions set forth herein, that they were false, that patients and medical professionals would rely

upon its misrepresentations and omissions, and that the misrepresentations were intended to cause patients like Plaintiffs to purchase and ingest Cymbalta.

462.   The specific acts of Lilly include the following:

a.   Fraudulently suggesting that the withdrawal risk is rare, or occurred at a rate of approximately one (1) percent, when the overall rate of patients experiencing withdrawal, according to Lilly's own clinical trials, is extremely high (at least 44.3% to 50%).  Furthermore, an analysis of the data from Lilly's clinical trials reveals, with statistically significant results, that in comparison to stopping a placebo, stopping Cymbalta elevated the risk of specific withdrawal symptoms as much as 23-fold (i.e., nausea 23-fold, dizziness 17-fold, paresthesia 11-fold, irritability 9-fold, nightmares 8-fold, headaches 7-fold, and vomiting 4-fold);

b.   Fraudulently omitting material information in its labeling and marketing concerning the severity of Cymbalta withdrawal including the fact that, in Lilly's clinical trials, between 9.6% and 17.2% suffered severe withdrawal (approximately 50% suffered moderate withdrawal);

c.   Fraudulently omitting material information in its labeling and marketing concerning the duration of Cymbalta withdrawal.  In fact, more than 50% of patients in the Cymbalta clinical trials continued to suffer from withdrawal symptoms two weeks after coming off the drug.  Lilly did not monitor withdrawal beyond two weeks.  Lilly was well aware that withdrawal symptoms could be protracted.  For instance, the Cymbalta Summary of Product Characteristics" (SmPC) in Europe stated that, "in some individuals [withdrawal symptoms] may be prolonged (2-3 months or more)."  The Practice Guideline for the Treatment of Patients With Major Depressive Disorder, Third Edition, published in 2010 (in which at least three Lilly consultants were on the working group and review panel) states under "Discontinuation syndrome" that "some patients do experience more protracted discontinuation syndromes, particularly those treated with paroxetine [Paxil]" and "as with SSRIs, abrupt discontinuation of SNRIs should be avoided whenever possible.  Discontinuation symptoms, which are sometimes protracted, are more likely to occur with venlafaxine [Effexor] (and, by implication devenlafaxine [Pristiq]) than duloxetine [Cymbalta] (100) and may necessitate a slower downward titration regimen or change to fluoxetine."  Given that Cymbalta's half-life falls between Effexor's and Paxil's – Effexor having the shortest, Cymbalta the second and Paxil the third – the Guideline is artfully worded;

d.   Purposefully failing to use systematic monitoring with a withdrawal symptom checklist in the Cymbalta studies underlying Perahia's analysis, whereas in earlier Lilly-sponsored studies comparing Prozac to Paxil, Zoloft, and Effexor, Lilly systematically monitored withdrawal using a symptom checklist.  Lilly was well aware of the withdrawal risk because it had orchestrated a marketing campaign differentiating Prozac from competitor antidepressants based on Prozac's comparatively long half-life.  In fact, based on Cymbalta's half-life (the second shortest half-life between Effexor and Paxil), one would expect the true risk of

withdrawal to be in a range between 66% and 78%. *See* Glenmullen, The Antidepressant Solution – A Step-by-Step Guide to Safely Overcoming Antidepressant Withdrawal, Dependence, and "Addiction" (2005);

e.      Because Cymbalta's half-life is the second shortest and the closest to Effexor's, Lilly must have recognized that the risk of Cymbalta withdrawal was substantial, as confirmed by its own clinical trial data, and likely much worse as explained above. However, rather than being forthcoming about this important risk, Lilly instead chose to obscure the risk by using misleading language in its labeling and marketing;

f.      Lilly obscured Cymbalta's true withdrawal risks by deflecting attention away from the Cymbalta-specific clinical trial data showing a clear and significant risk and focusing instead on other SSRIs and SNRIs. For instance, Lilly's label stated "During marketing of other SSRIs and SNRIs … there have been spontaneous reports of adverse events occurring upon discontinuation of these drugs, particularly when abrupt …" Lilly's use of "spontaneous" reports from "other SSRIs or SNRIs" is misleading given that approximately 40% to 50% of patients in Lilly's own clinical trials of Cymbalta reported adverse events. In using this language, Lilly misleadingly suggests that the withdrawal risks associated with other SSRIs and SNRIs are worse than Cymbalta's risks, which is the opposite of the truth – Cymbalta is one of the worst;

g.      In addition to failing to warn about these known risks, Lilly utilized paid Key Opinion Leaders ("KOLs") to endorse the safety and efficacy of Cymbalta and assure prescribing doctors that Cymbalta's withdrawal risks were not as frequent, severe or protracted as they really are. Lilly did this through medical journal articles, treatment guidelines and medical seminars. For instance, Alan F. Schatzberg, a Lilly consultant and KOL who researched the phenomenon of antidepressant withdrawal as part of Lilly's campaign to promote Prozac in the 1990s, *see* paragraph 18 *supra*, wrote an article titled "Antidepressant Discontinuation Syndrome: Consensus Panel Recommendations for Clinical Management and Additional Research," J. Clin Psychiatry, 2006; 67 (suppl 4), two years after Cymbalta came on the market. However, the article makes no mention whatsoever of Cymbalta withdrawal or the fact that Lilly's own trials established withdrawal risks that were greater than those Lilly chose to include in the Cymbalta label;

h.      Similarly, the American Psychiatric Publishing Textbook of Psychiatry, Fifth Edition with a Foreword written by the same Lilly consultant and KOL, Dr. Schatzberg, published in 2008, makes no mention whatsoever of Cymbalta nor the frequency, severity, or duration of Cymbalta withdrawal. Indeed, the text states:

"Discontinuation symptoms appear to occur most commonly after discontinuation of short-half-life serotonergic drugs (Coupland et al. 1996), such as fluvoxamine [Luvox], paroxetine [Paxil], and venlafaxine [Effexor]."

There is no mention of Cymbalta although it had been on the market for four years and has a shorter-half than either Luvox or Paxil.  Indeed, it had the second shortest half-life next to Effexor;

i.      Lilly also appears to have engaged in selective and biased publication of its clinical trials of Cymbalta.    In a recent study published in the New England Journal of Medicine, researchers obtained clinical trials for antidepressants (including Cymbalta) that had been submitted to the FDA and compared them with studies that had been published.  The authors found that there was a "bias towards the publication of positive results" and that, "according to the published literature, it appeared that 94% of the trials conducted were positive.  By contrast, the FDA analysis shows that 51% were positive." The authors found that, as a result of such selective publication, the published literature conveyed a misleading impression of Cymbalta's efficacy resulting in an apparent effect-size that was 33% larger than the effect size derived from the full clinical trial data. *See* Erick H. Turner et al., Selective Publication of Antidepressant Trials and Its Influence on Apparent Efficacy, 358 NEW ENG. J. MED. 252 (2008).

463.  When the above representations and omissions were made by Lilly, it knew those representations and omissions to be false, or willfully and wantonly and recklessly disregarded whether the representations and omissions were true.  These representations and omissions were made by Lilly with the intent of defrauding and deceiving the public and the prescribing medical community and with the intent of inducing the public to take Cymbalta and the medical community (including Plaintiff's doctors) to recommend, prescribe, and dispense Cymbalta to their patients without adequate warning.

464.  At the time the aforementioned representations or omissions were made by Lilly, and at the time Plaintiffs' purchased and began to ingest Cymbalta, Plaintiffs were unaware of the falsity of Lilly's representations and omissions and reasonably relied upon Lilly's representations and omissions.

465.  In reliance upon Lilly's representations and omissions, Plaintiffs were induced to take Cymbalta and suffered significant withdrawal side effects.

466. Lilly's motive in failing to advise physicians and the public of Cymbalta's withdrawal risks was financial gain along with its fear that, if accompanied by proper and adequate information, Cymbalta would lose its share of the antidepressant market.

467. At all times herein mentioned, the actions of Lilly, its agents, servants, and employees were wanton, grossly negligent, and reckless, and demonstrated a complete disregard and reckless indifference to the safety and welfare of Plaintiffs in particular and to the general public in that Lilly did willfully and knowingly place the dangerous and defective drug Cymbalta on the market with the specific knowledge that it would be sold to, prescribed for, and used by members of the public and without adequate instructions for use.

468. Punitive damages would be particularly appropriate for Lilly in this case given that fraud and concealment appear to be a part of its modus operandi. Since the 1980s, Lilly has had an ongoing history of concealing serious side effects associated with its drugs and illegally promoting its drugs. For example, in 1985, Lilly and one of its officers pled guilty to multiple criminal counts of violating the Food Drug and Cosmetic Act ("FDCA") arising out of Lilly's concealment of serious liver and kidney dysfunctions associated with its arthritis drug Oraflex. In 2009, Lilly illegally promoted Zyprexa and plead guilty resulting in a payment of $1.415 billion to the federal government. This resolution included a criminal fine of $515 million, which, at the time, was the largest settlement ever in a health care case, and the largest criminal fine for an individual corporation ever imposed in a United States criminal prosecution of any kind.

469. At *all tim*es relevant herein, Lilly's conduct was malicious, fraudulent, and oppressive toward Plaintiffs in particular and the public generally, and Lilly conducted itself in a willful, wanton, and reckless manner. Despite Lilly's specific knowledge regarding Cymbalta's withdrawal risks as set forth above, Lilly deliberately recommended, manufactured, produced, marketed, sold, distributed, merchandised, labeled, promoted, and advertised Cymbalta as being safe, with minimal withdrawal risks.

470. All of the foregoing constitutes an outright and conscious disregard of the rights and safety of a large segment of the public. Thus, Lilly is guilty of reckless, willful, and wanton acts and omissions which evidence a total and conscious disregard for the safety of Plaintiffs and others which proximately caused the injuries described herein. Therefore, Plaintiffs request punitive and exemplary damages in an amount to be determined at trial to deter Lilly from continuing its

conscious disregard of the rights and safety of the public at large and to set an example so Lilly – as well as other similarly situated drug manufacturers – will refrain from acting in a manner that is wanton, malicious, and in conscious disregard of the rights of a large segment of the public.

471.   As a direct and proximate result of Lilly's false representations and omissions, Plaintiffs have suffered serious injury, incurred and will in the future incur expenses, lost income and sustained other damages, including but not limited to pain and suffering, emotional distress, sorrow, anguish, stress, shock and mental suffering.

## SIXTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

472.   Plaintiffs incorporate by reference, as if fully set forth herein, all other paragraphs of this Complaint.

473.   Lilly made numerous representations, descriptions, and promises to Plaintiffs regarding the frequency, severity and duration of withdrawal symptoms caused by ceasing to take Cymbalta.   Accordingly, Lilly expressly warranted that Cymbalta had a low or rare incidence of withdrawal symptoms.

474.   As described herein, Plaintiffs suffered injuries as a direct and proximate result of their discontinuation of Cymbalta.

475.   At the time of Plaintiffs' use of Cymbalta and resulting injuries, the Cymbalta he/she was taking was in essentially the same condition as when it left the control and possession of Lilly.

476.   At all times relevant, the Cymbalta received and used by Plaintiffs was not fit for the ordinary purposes for which it is intended to be used in that, *inter alia*, it posed a higher risk of withdrawal symptoms – of greater duration and severity – than other similar products available in the market.

477.   Plaintiffs' injuries were due to the fact that Cymbalta was in a defective condition, as described herein, rendering it unreasonably dangerous to each of them.

478.   As a direct and proximate result of one or more of these wrongful acts and omissions of Lilly, Plaintiffs suffered significant injuries as set forth herein.

479.  WHEREFORE, Plaintiffs demand judgment against Lilly for compensatory, statutory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems appropriate pursuant to the common law and statutory law.

## **PRAYER FOR RELIEF**

480.  WHEREFORE, Plaintiffs respectfully pray for judgment against Lilly as follows:

a.  Judgment in favor of Plaintiffs and each of them against Lilly, for all damages in such amounts as may be proven at trial;

b.  Compensation for economic and non-economic losses, including but not limited to, past and future medical expenses, medical monitoring, out-of-pocket expenses, past and future physical pain and mental anguish, past and future physical impairment, past and future loss of companionship and consortium, and past and future loss of household services, in such amounts as my be proven at trial;

c.  Past and future general damages, according to proof;

d.  Any future damages resulting from permanent injuries;

e.  Psychological trauma, including but not limited to mental anguish, mental distress, apprehension, anxiety, emotional injury, psychological injury, depression, and aggravation of any pre-existing and underlying emotional or mental diseases or conditions;

f.  Pain and suffering;

g.  Loss of enjoyment of life;

h.  Punitive and exemplary damages in an amount to be determined by trial, including but not limited to treble damages should such damages be prescribed by law;

i.  Attorneys' fees and costs;

j.  Prejudgment and post-judgment interest;

k.  Costs to bring this action; and

l.  Any such other and further relief as the Court may deem just and proper in law or in equity.

///

///

///

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs respectfully request a trial by jury on all claims triable as a matter of right.


Dated: June 11, 2015



        *s/ Robert J. Schuckit* _____
        Robert J. Schuckit
        Indiana State Bar No.: 15342-49
        Schuckit & Associates PC
        4545 Northwestern Drive
        Zionsville, IN 46077
        Telephone: (317) 363-2400
        Facsimile: (317) 363-2257
        E-mail: rschuckit@schuckitlaw.com

        Steven B. Stein [*pro hac vice* motion pending]
        California State Bar No.: 52829
        Knox Ricksen LLP
        One Kaiser Plaza, Suite 1101
        Oakland, CA 94612
        Telephone: (510) 285-2500
        Facsimile: (510) 285-2505
        ***Counsel for Plaintiffs***